UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRYNA GORB, (A#137-845-024),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT,<br>Respondent. | No. 1:26-cv-05798-DC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons provided below, the undersigned recommends that the petition be denied without prejudice to Petitioner seeking appropriate habeas relief in a future action.

## I. Factual and Procedural History

Petitioner is a native and citizen of Ukraine who entered the United States lawfully pursuant to a visitor's visa, but overstayed that visa. Petitioner has resided at the same address in San Francisco for the past sixteen years. During that time, she developed personal and professional ties to the community and consistently filed federal income tax returns listing her address in San Francisco. See ECF No. 1 at 4, ECF No. 9 (letters of support from community members). She has no criminal record and is not subject to any final administrative order of removal.

On July 22, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner at the San Francisco International Airport after she disembarked from a domestic flight from Portland. ECF No. 6. ICE issued her an administative arrest warrant, dated July 22, 2026. ECF No. 5-1 at 2. ICE's Notice of Custody Determination, also dated July 22, found she should remain detained. ECF No. 5-1 at 1. On that same form, Petitioner requested an immigration judge review the custody determination. However, an IJ custody redetermination hearing was not formally scheduled until August 4, at which point it was set for August 13, 2026. ECF No. 8-1. On August 17, 2026, Petitioner filed a notice stating that she "appeared without habeas counsel" at the custody determination hearing on August 13 and "withdrew her request for a bond determination." ECF No. 11. Petitioner remains detained at the California City Detention Facility located in this judicial district.

In her amended § 2241 application, petitioner challenges the constitutionality of her initial seizure, as well as her ongoing detention as a violation of the Fifth Amendment's Due Process Clause. ECF No. 6. Petitioner contends that in order to seek her arrest, ICE was constitutionally obligated to provide notice and a pre-deprivation hearing, relying on Gagik T. v. Chestnut, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"). Petitioner requests immediate release from immigration detention.

Respondent notes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and that she was scheduled to have a custody redetermination hearing before an immigration judge on August 13, 2026. ECF Nos. 5, 8. Based on this scheduled bond hearing, Respondent contends that the amended § 2241 petition should be dismissed. ECF No. 8.

Despite the scheduled bond hearing, Petitioner continues to argue that she was entitled to a pre-deprivation hearing prior to arrest. ECF Nos. 7. 11.

**II. Analysis**

With the exception of her initial entry into the United States, there is nothing in the record showing any encounter between Petitioner and immigration authorities prior to her arrest on July

22, 2026. This case is accordingly materially distinguishable from the many cases finding a prior release by immigration authorities creates a protectable due process interest requiring a pre-deprivation hearing in advance of any attempt at re-detention. See, e.g., Tinoco v. Noem, No. 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025).

Petitioner relies instead on another line of cases involving individuals who had never been detained by immigration authorities, but who had filed applications for immigration relief prior to their detention by ICE. In particular, Petitioner relies on Gagik T., which ordered immediate release and forbade re-detention absent a pre-deprivation hearing. Gagik T. had entered the United States in 2020 on a visitor visa. See 2026 WL 1837413, at *1. "Before his authorized stay expired … [he] filed an affirmative application for asylum and withholding of removal[,]" and received employment authorization through August 8, 2030. Id. After not seeking to detain him for roughly six years, on March 2, 2026, ICE officers arrested him in Sacramento and issued him a notice to appear for removal proceedings based on overstaying his visa. Id. On March 18, 2026, an immigration judge denied Gagik T.'s release on bond, finding him to be a "significant flight risk[.]" At a second bond hearing, on June 1, 2026, an immigration judge again denied bond, finding no material change in circumstances. Gagik T. did not appeal either of the bond denials to the Board of Immigration Appeals.

The District Judge held that due process entitled Gagik T. to notice and a pre-deprivation hearing under these circumstances. As the District Judge reasoned:

> Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process. For example, in Kharitonova v. Albarran, the district court considered a long-present asylum applicant with no criminal history who was detained without a prior hearing. No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026). Rejecting the Government's contention that she held no liberty interest because it had never previously detained and released her, the court reasoned that the Government had "made a decision not to detain her in the first place," and that this decision vested the same liberty interest as a prior detention and release. Id. at *2. Courts in this district have since adopted the district court's reasoning in Kharitonova on facts like those presented here. See Kalkan v. Chestnut, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026); Villanueva-Montanez v. Lyons, No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930 (E.D. Cal. Mar. 23, 2026); E.E.O.H. v. Noem, No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4–5 (E.D. Cal. Mar. 26, 2026).

> The court similarly finds that reasoning applicable and persuasive here. Petitioner was lawfully admitted in 2020. Dkt. No. 12, Exh. 1. He filed a timely application for asylum that USCIS has accepted and that remains pending. Although his initial permission to enter the United States expired, the government chose to grant him employment authorization. It then chose to renew it—and, indeed, it remains valid through 2030. By concluding that there was no need to detain Petitioner after his B-2 visitor visa had expired, and instead sanctioning his continued presence in the United States by granting and renewing his employment authorization, the government vested in Petitioner a liberty interest in his continued freedom. See Kharitonova, 2026 WL 531441, at *2; E.E.O.H., 2026 WL 850363, at *4–5.
>
> Respondents resist this conclusion principally by invoking Rodriguez Diaz [v. Garland], which held that the post-deprivation bond procedures of § 1226(a) facially satisfy due process. 53 F.4th [1189,] 1213 [9th Cir. 2022]. But Rodriguez Diaz addressed the adequacy of the burden allocation at a bond hearing for a person already in custody; it did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process. See id. at 1196–97. That is the question presented here, and it is the question the courts of this district and others have answered against the Government. Respondents' related contention—that Petitioner's admission and EAD reflect no formal determination of flight risk or dangerousness, Dkt. No. 12 at pgs. 2–3—does not defeat the liberty interest. The point is not that any single agency action adjudicated flight risk. It is that the Government's course of conduct over six years, taken as a whole, reflected a sustained decision to permit Petitioner's liberty, and it is that decision that gives rise to the interest the Due Process Clause protects. See E.E.O.H., 2026 WL 850363, at *4–5.

2026 WL 1837413, at *3.

In short, where "the Government ha[s] made a decision not to detain" a non-citizen "in the first place" after the filing of an application for immigration benefits, "this decision vest[s] the same liberty interest as a prior detention and release." Gagik T., 2026 WL 1837413, at *3 (quoting Kharitonova, 2026 WL 531441, at *2). By contrast, in the instant case, there is nothing in the record to show that the Government was aware of Petitioner's unlawful presence and nonetheless declined to take enforcement action against her. In other words, there is not information in the record showing a "course of conduct" by the government that "reflect[s] a sustained decision to permit Petitioner's liberty[.]" Id. at *3. While Petitioner asserts she filed income tax returns at her long-time address, it is not clear whether and to what extent the Internal Revenue Service ("IRS") would have shared information with immigration authorities, at least until a policy change during the current Presidential Administration.[1]

[1] The IRS has traditionally interpreted certain provisions of the Internal Revenue Code ("IRC") to prohibit the disclosure of taxpayers' addresses to other agencies. See Centro de Trabajadores Unidos v. Bessant, 167 F.4th 1218, 1226 (D.C. Cir. 2026). "In the past, IRS officials have also stated that tax information is not used to aid immigration enforcement." Id. However, on April 7,

To be sure, Petitioner has a substantial liberty interest that is protected by the Due Process Clause. However, the record indicates that ICE made an administrative custody determination on July 22, the day Petitioner was arrested, that Petitioner sought redetermination of the decision to detain her before an immigration judge on the same date, and that her custody redetermination hearing was scheduled and occurred on August 13 (though Petitioner reportedly withdrew her custody redetermination request at that hearing). This case is accordingly distinguishable from cases where ICE arrested individuals who had been unlawfully present in the United States for years and detained them for months without a bond hearing. See, e.g., Hernandez v. Mullin, No. 5:26-cv-01949-AJR, 2026 WL 1196341 (C.D. Cal. April 28, 2026) (ordering immediate release and a pre-deprivation hearing for individual who had lived for 26 years in the United States, had three minor U.S. citizen children, and paid taxes, after immigration judge erroneously found no jurisdiction to convene a bond hearing, in defiance of the Maldonado-Bautista declaratory judgment).

While it is troubling that the custody redetermination hearing Petitioner requested on July 22 was not calendared until August 4 (to be convened on August 13), Petitioner has not alleged that such delay in the setting of a bond hearing entitles her to relief. Moreover, to the extent that Petitioner challenges her initial seizure, the record establishes that ICE issued an administrative warrant to arrest her. Petitioner does not challenge the validity of this administrative warrant, nor submit evidence that it was issued after her arrest.

For the foregoing reasons, Petitioner's due process claim for immediate release and entitlement to a pre-deprivation should be denied. However, there is no dispute that Petitioner is entitled to a custody redetermination hearing before an immigration judge pursuant to 8 U.S.C. §

---

2025, the Department of Homeland Security ("DHS") and IRS entered into an MOU to "establish the procedures and requirements" for ICE to request from the IRS "addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) [which criminalizes attempts to thwart an order of removal]." Id. This DHS-IRS MOU and related instances of recent information sharing are the subject of ongoing litigation. Contrast id. at 1224 (holding that challengers to the MOU were unlikely to succeed on the merits), with Center for Taxpayer Rights v. IRS, No. 1:25-cv-00457-CKK, ECF Nos. 53 & 54 (D.D.C. Nov. 21, 2025) (granting preliminary injunction against data sharing practices between the IRS and ICE).

1226(a). Petitioner may request such a hearing and—should an immigration judge deny release despite Petitioner's lack of criminal history and despite her significant ties to the community—may challenge any denial of bond within the parameters set out in Martinez v. Clark, 214 F.3d 775 (9th Cir. 2024).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition (ECF No. 1) and amended petition for a writ of habeas corpus (ECF No. 6) be DENIED without prejudice.

2. The Clerk of Court be directed to enter judgment for Respondent and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 19, 2026



SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE